## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| BRENTON RODEHEAVER, | ) | |
| | ) | |
| *Plaintiff*, | ) | **Case No.** |
| | ) | |
| *vs.* | ) | |
| | ) | |
| HOMEPRO REMODELERS LLC, AND | ) | |
| ROBERTO BENEDITO, *individually and* | ) | |
| *jointly*, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| *Defendants*. | ) | |
| | ) | |

## <u>COMPLAINT IN CIVIL ACTION</u>

Plaintiff, Brenton Rodeheaver (hereinafter, "<u>Plaintiff</u>"), by and through the undersigned counsel, now files this Complaint in Civil Action (hereinafter, the "<u>Complaint</u>"), averring as follows:

## <u>PARTIES</u>

1.      Plaintiff is an adult individual who currently resides at 42 Hinerman Road, Washington, Pennsylvania 15301.

2.      Defendant, HomePro Remodelers LLC (hereinafter "<u>HomePro</u>"), is a limited liability company formed and registered in the Commonwealth of Pennsylvania with its principal place of business located at 3500 Extension Avenue, Finleyville, Pennsylvania 15332. HomePro is in the business of remodeling and constructing improvements and additions to residential homes.

3.      Defendant, Roberto Benedito (hereinafter, "<u>Mr. Benedito</u>") (collectively, HomePro and Mr. Benedito are referred to as "<u>Defendants</u>"), is an officer, director, and owner of HomePro.

At all times relevant hereto, Mr. Benedito, among other employment duties and roles, managed HomePro's human resource department.

**<u>JURISDICTION AND VENUE</u>**

4.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff brings this lawsuit asserting a violation of the Fair Labor Standards Act, 29 U.S.C. § 201206, *et seq.*, (hereinafter, the "<u>FLSA</u>").

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), because Plaintiff alleges violations of the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101, *et seq.*, (hereinafter, the "<u>MWA</u>"), the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* (hereinafter, the "<u>WPCL</u>"), and asserts Pennsylvania state common law claims for breach of contract and unjust enrichment.  Ultimately, as explained more thoroughly below, the factual basis for the Pennsylvania statutory and common law claims are so related to the FLSA claim that they form part of the same case or controversy under Article III of the United States Constitution.

6.      Venue is also proper in this Court because HomePro, and Mr. Benedito in his employment relationship with HomePro, are residents of Pennsylvania and a substantial part of the events or omissions giving rise to the claims averred herein occurred in Finleyville, a municipal borough in Washington County, which is located within the geographical confines of the United States District Court for the Western District of Pennsylvania.  Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

7.      This Court has personal jurisdiction over Defendants because Defendants routinely and regularly conduct business in the Commonwealth of Pennsylvania and routinely and regularly solicit business in Pennsylvania.  Further, as averred more fully below, Defendants violated

numerous statutory provisions of Pennsylvania law and Pennsylvania common law, and all the events giving rise to Defendants' unlawful conduct, including the harm that Plaintiff sustained therefrom, occurred in Pennsylvania.  As such, this Court, at bare minimum, may exercise personal jurisdiction over Defendants because Defendants have the required minimum contacts with this forum for purposes of Pennsylvania's long-arm statute and the Due Process Clause of the United States Constitution.

8.      Therefore, this Court may properly maintain personal jurisdiction over Defendants in light of Defendants' extensive conduct within Pennsylvania and this judicial district in particular, and the exercise of personal jurisdiction complies with traditional notions of fair play and substantial justice.

## <u>GENERAL ALLEGATIONS</u>

9.      On or about May 2022, Defendants hired Plaintiff as a "Laborer" to which Plaintiff commenced his employment shortly thereafter.

10.     For approximately three (3) months, Plaintiff worked as a Laborer for HomePro until his justified and compelled resignation in August 2022.

11.     Within his role as Laborer, Plaintiff was responsible for reporting to jobs sites and performing duties related to construction and remodeling installations.  HomePro compensated Plaintiff at an hourly rate of $22.00 per hour and paid him on a weekly basis.  At all times pertinent hereto, Plaintiff was classified as a "non-exempt" employee pursuant to the FLSA and the MWA and Plaintiff's primary function was the performance of tasks becoming that of a "non-exempt" employee.

12.     Notably, during their pre-employment discussions, Mr. Benedito and Plaintiff agreed that Plaintiff would work fifty-five (55) hours per week. In so doing, Mr. Benedito acted in his professional capacity and within the scope of his employment.

13.     On or about October 2022, Mr. Benedito, acting in a personal capacity and outside the scope of his employment, extended an informal advance of $400.00 to Plaintiff (hereinafter, "the Loan").  Plaintiff intended to use the money from the Loan to purchase new tires for his personal vehicle, which Plaintiff also used for work.

14.     Over the course of Plaintiff's employment with HomePro, Plaintiff's sole supervisor, Tony (last name unknown at this time) (hereinafter, "Mr. Tony"), repeatedly left work after just one-half of the total work time that was prescheduled for the day.

15.     Ultimately, the conduct of Mr. Tony, described directly above, forced Plaintiff to also discontinue working because Defendants did not permit Plaintiff to work unsupervised.  As a result, the total number of hours that Plaintiff worked during the workweek were significantly reduced, and Plaintiff would typically work closer to, but no more than, forty (40) hours per week, as opposed to the 55 hours that Defendants and Plaintiff agreed upon in their employment contract.

16.     In addition to the above-mentioned loss of promised work hours, Defendants did not compensate Plaintiff for the time he spent traveling to and from job sites, which oftentimes constituted a considerable amount of compensable work time.  For example, it would take Plaintiff approximately thirty (30) minutes to one and a half hour to travel to and from job sites.

17.     Indeed, Mr. Benedito deemed the time that Plaintiff spent traveling to and from job sites to be so significant and substantial that Mr. Benedito verbally promised to provide Plaintiff with compensation for the expense of purchasing gasoline for his personal/work vehicle.

However, Mr. Benedito never provided Plaintiff with any form or means of compensation for his vehicle's usage of gasoline.

18.     Moreover, there were instances where Plaintiff would arrive at a job site and wait for a supervisor or other employee.  However, that supervisor and/or employee never arrived at the job site and, due to the internal policy of HomePro, Plaintiff was not permitted to work those days.

19.     On the whole, during the 3 months that Plaintiff was employed with HomePro, Plaintiff accumulated approximately eighty (80) hours of compensable work time that he devoted traveling to and from work and spent at job sites to which a supervisor and/or employee never arrived and Plaintiff could not continue working.  HomePro, however, did not compensate Plaintiff for this compensable work time (hereinafter, the "Traveling and Job Site Time Deduction Practice").

20.     On or about August 2022, Plaintiff resigned from his employment with HomePro. During the weekly pay period that immediately preceded the above-mentioned resignation, Plaintiff had worked a total of twenty (20) hours for and on behalf of HomePro.

21.      In his final paycheck, however, Defendants compensated Plaintiff with a check in the amount of zero dollars (hereinafter, the "Final Paycheck").

22.     When Plaintiff inquired with Mr. Benedito as to why he received zero dollars in the Final Paycheck, Mr. Benedito informed Plaintiff that he had taken money from the Final Paycheck as payback for the personal Loan.

23.     However, Mr. Benedito lacked the legal authority to deduct hours that Plaintiff worked from the Final Paycheck and, also, lacked the legal authority to refuse to compensate Plaintiff for those hours (hereinafter, the "Final Paycheck Time Deduction Practice").

24.     To date, Defendants have not paid Plaintiff the amount of wages that are due and owing because Defendants implemented and effectuated the Traveling and Job Site Work Time Deduction Practice and completely and utterly failed to compensate Plaintiff in the Final Paycheck, instituting the Final Paycheck Time Deduction Practice instead.

**COUNT I**
**FAILURE TO PAY MINIMUM WAGE**
**IN VIOLATION OF THE FLSA**
**29 U.S.C. § 201,** *et seq.*
***Plaintiff Brenton Rodeheaver v. Defendants HomePro Remodelers, LLC and Robert Benedito,***
***individually and jointly***

25.     Plaintiff incorporates all allegations contained in the paragraphs above, as if fully set forth at length herein.

26.     Prefatorily, the FLSA mandates two minimum rates of pay for time "employees" spend dedicated to workplace operations for covered "employers" who constitute an "enterprise engaged in commerce." 29 U.S.C. §§ 206, 207.  Relevant here, the FLSA dictates a minimum rate of pay for any hours worked such that no employee is compensated less than seven dollars and twenty-five cents ($7.25) per hour.  29 U.S.C. § 206.

27.     The FLSA defines the term "employer" expansively to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

28.     In interpreting this broad phrase, the United States Court of Appeals for the Third Circuit concluded that liability for violations of the FLSA clearly attaches to the corporate entity itself, here, HomePro, and further, to the owners, officers, and supervisory personnel of the organization, here, Mr. Benedito.  See *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014).

29.     Somewhat relatedly, the FLSA defines "employ" to mean "to suffer or permit to work."  29 U.S.C. § 203(g).

30.     HomePro extended a position-for-hire to Plaintiff with specified duties, start-times, and pay-rates.  HomePro also possessed ultimate authority and control over Plaintiff and instructed Plaintiff to perform certain tasks for the financial benefit of HomePro.  At all times relevant hereto, HomePro exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship.

31.     At all times relevant hereto, HomePro also controlled the general terms and conditions of Plaintiff's workplace duties, dictated the compensation structure and scheme, and mandated the wage keeping practices that Plaintiff was subjected to as a condition of employment.

32.     As a corporate entity responsible for the acts of its employees and/or agents acting withing the scope of their authority, HomePro "permitted" Plaintiff to work and thus "employed" Plaintiff per 29 U.S.C. § 203(g).

33.     As such, HomePro is an "employer" pursuant to 29 U.S.C. § 203(d) vis-à-vis Plaintiff and is therefore liable for violations of the FLSA.

34.     Furthermore, Mr. Benedito, an officer, director, and owner of HomePro, regularly exercised supervisory control over the employees of HomePro and possessed the authority to devise and alter the terms and conditions of Plaintiff's employment and that of other employees, including compensation and pay practices.

35.     In addition, Mr. Benedito possessed the ability to hire and fire employees of HomePro and to significantly affect and/or alter the terms and conditions of their employment, including Plaintiff.  Therefore, Mr. Benedito exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship sufficient to satisfy 29 U.S.C. § 203(d).

36.     Given Mr. Benedito's personal knowledge and/or role in HomePro's unlawful workplace wage practices, delineated above, which he did while acting within the scope of his employment, Mr. Benedito is individually liable for the corresponding violations of the FLSA.

37.      Moreover, pursuant to 29 U.S.C. § 203(s)(1), the mandates of the FLSA apply to an organization/enterprise that satisfies two statutory criteria: (1) it must be engaged in "commerce," and (2) have an annual gross volume of sales not less than $500,000.00. *Id.*

38.     Under the FLSA, the term "commerce" is specifically defined to include activities such as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).

39.     In elaborating on the term "commerce," the Third Circuit concluded in *Marshall v. Brunner*, 668 F.2d 748, 751 (3d. Cir. 1982), that an employer's use of out-of-state manufactured equipment which the employer transported in-state for its operations was sufficient to establish that the employer was an "enterprise engaged in commerce" under the FLSA.

40.     Upon information and belief, HomePro purchased materials, supplies, and equipment necessary and integral for its business operations to and from out-of-state vendors for the express purpose of utilizing said materials, supplies, and equipment for its business operations within Pennsylvania.

41.     HomePro also transmitted and received payments and credits from out-of-state vendors by and through the use of the internet, digital payment processing services which traverse state lines, and through interstate mail via the United States Postal System.

42.     Therefore, HomePro regularly engaged in "commerce" sufficient to satisfy the first prong of 29 U.S.C. § 203(s)(1)(A)(i).

8

43.     Upon information and belief, HomePro provides remodeling and construction improvements to residential homes in various counties in the Commonwealth of Pennsylvania, and given the nature, size, scope, and industry of its business, and the frequency of the services sales that it has effectuated throughout Pennsylvania, HomePro had an annual dollar volume of sales in excess of $500,000.00.

44.     Hence, HomePro satisfies the second prong of 29 U.S.C. § 206(s)(1)(A)(i).

45.     Accordingly, HomePro is an "enterprise engaged in commerce" within the purview of 29 U.S.C. § 206(s)(1).

46.     Furthermore, the FLSA defines "employee" to include any individual "employed by an employer" and excludes certain circumstances that are inapplicable to the instant facts, such as individuals employed by the United States Government or the United States Postal Service.   29 U.S.C. § 203(e)(1).

47.     To effectuate the remedial purpose of the FLSA, the Third Circuit interprets "employee" in an "exceedingly broad" manner.  *Safarian v. Am. DG Energy Inc.*, 622 F. App'x 149, 151 (3d Cir. 2015), citing *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991).

48.     In evaluating whether an individual is an "employee" under the FLSA, the Third Circuit examines the "economic reality" surrounding the workplace relationship and utilizes six factors to determine an individual's employment status:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.
> 1.

*Martin*, 949 F.2d at 1293, quoting *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985).

49.     "Not only should courts examine the circumstances of the whole activity, they should [also] consider whether, as a matter of economic reality, the individuals are dependent upon the business to which they render service."  *Id.* (internal citation and quotation marks omitted).

50.     At all times relevant hereto, Defendants possessed and, in fact, exercised their rights to control Plaintiff's job duties, namely with respect to their decisions and directives concerning where, how, and when Plaintiff was to work as a Laborer.

51.     Defendants also exerted significant control over the manner in which Plaintiff performed his workplace duties. Defendants delineated the methodologies involved in the completion of Plaintiff's duties, denoted his expected rate of productivity, dictated the speed in which Plaintiff was to complete his tasks, and designated the specific projects on which Plaintiff was to perform as a Laborer.

52.     Plaintiff had no personal financial investment in HomePro's operations.

53.     Instead, Plaintiff was compensated at a determined hourly rate in his role.  All the compensation that Defendants disbursed to Plaintiff was derived from hours recorded by HomePro and Defendants' wage payment practices; Plaintiff was dependent on these schemes of compensation for his pay; and Plaintiff never had the opportunity to obtain bonuses or other forms of additional renumeration based on the exercise of managerial skill or productivity.

54.     Further, Plaintiff did not utilize his own equipment while working for HomePro, and HomePro supplied Plaintiff with all the supplies and equipment necessary for him to perform his job duties as a Laborer.

55.     Although Plaintiff did not utilize any "special skill" akin to that of a licensed professional, the workplace duties of which Plaintiff completed were an integral component of HomePro's day-to-day operations because Plaintiff performed the labor services necessary for HomePro to market and provide remodeling and construction improvements to residential homes.

56.     Finally, Plaintiff was completely dependent on HomePro to perform his job duties because HomePro had the clientele and wherewithal necessary to bestow Plaintiff with work as a Laborer.

57.     Plaintiff is therefore an "employee" for purposes of the FLSA.

58.     Consequently, given Defendants' joint status as an "employer" and an "enterprise engaged in commerce," and Plaintiff's status as an "employee," Defendants were obligated to comply with the minimum rate of pay requirements of the FLSA.

59.     That is, at all times hereto, Defendants were mandated to pay Plaintiff at least $7.25 for each and every hour that he worked.  29 U.S.C. § 206.

60.     As previously averred in this Complaint, from May 2022 to August 2022, Plaintiff worked approximately 80 hours of compensable work time that he expended traveling to and from job sites and spent waiting at job sites to which a supervisor and/or employee never arrived and Plaintiff could not continue working.

61.     As such, Plaintiff engaged in hours of work that Defendants were legally obligated to compensate him at the standard minimum rate of $7.25 per hour.

62.     However, Defendants explicitly refused to pay Plaintiff the minimum rate of pay for the above-mentioned hours that Plaintiff worked.

63.     Instead, as averred above, Defendants implemented the Traveling and Job Site Time Deduction Practice and the Final Paycheck Time Deduction Practice and effectuated

schemes that refused to pay Plaintiff any wages whatsoever for the number of hours that Plaintiff worked as a matter of fact.

64.  Therefore, Defendants violated 29 U.S.C. § 207(a)(1) in failing to pay Plaintiff the minimum rate of pay for approximately 80 hours of work.

65.  Otherwise, 29 U.S.C. § 216(b) of the FLSA provides that when an employer violates 29 U.S.C. § 207(a)(1), an employee may collect liquidated damages in an amount equal to the amount of wages that are due and owing and, additionally, an award of attorney's fees.  *Id.*

66.  An award of liquidated damages pursuant to the FLSA is not penal in nature, but rather, is viewed as a compensatory remedy.  *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991), citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942).

67.  Indeed, the Supreme Court of the United States has opined on the compensatory nature of this remedy, describing it as compensation for the "workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Schonewolf v. Waste Mgmt., Inc.*, No. 17-3745, 2018 BL 92619, at *5 (E.D. Pa. Mar. 19, 2018) citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945).

68.  Furthermore, the award of liquidated damages is mandatory unless an employer can make a "showing of good faith and reasonable grounds for its conduct."  *Martin*, 949 F.2d at 1299.

69.  Defendants' willful and knowing actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the FLSA, deprivation of the statutorily required overtime rate of pay, and the total amount of Plaintiff's damages.

70.  Defendants are unable to meet their burden of establishing "good faith and reasonable grounds" for their violation of Plaintiff's rights.  This is demonstrated by Defendants' willful animus in flagrantly disregarding their responsibilities and obligations as an employer.

71.     Therefore, Defendants are liable to Plaintiff for actual damages (lost wages), liquidated damages, as well as reasonable attorney's fees, costs, and expenses pursuant to 29 U.S.C. § 216(b).

72.     As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered tangible economic and pecuniary loss in forms including, but not limited to, the deprivation of lawfully owed wages.

WHEREFORE, Plaintiff, Brenton Rodeheaver, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT II**
**FAILURE TO PAY MINIMUM WAGE**
**IN VIOLATION OF THE MWA**
**43 Pa. Stat. §333.101,** *et seq.*
***Plaintiff Brenton Rodeheaver v. Defendants HomePro Remodelers, LLC and Robert Benedito,***
***individually and jointly***

73.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

74.     The MWA defines "wages" to mean compensation due to any employee by reason of his or her employment.  43 P.S. § 333.103(d).

75.     The MWA further establishes a minimum rate for the compensation of any "wages for all hours worked."  43 P.S. § 333.104(a).  The minimum rate established under the MWA mirrors the FLSA's minimum rate of pay where the FLSA offers greater compensation to employees.  43 P.S. § 333.104(a.1).

76.     The MWA delineates a minimum rate of pay of seven dollars fifteen cents ($7.15) per hour beginning July 1, 2007.  43 P.S. § 333.104(a)(8).

77.     The FLSA delineates a minimum rate of pay of $7.25 per hour and therefore controls the current minimum rate of pay within the Commonwealth of Pennsylvania.  29 U.S.C. § 206(a)(1)(C); 43 P.S. § 333.104(a.1).

78.     Nearly identical to the pertinent provision of the FLSA, the MWA defines "employer" to include "any association, corporation, individual, partnership," or "any person or group or persons acting, directly or indirectly, in the interest of an employer in relation to any employee." 43 P.S. § 333.103(g).

79.     Analogous to the case law interpreting the FLSA, the definition of "employer" is expansively construed within the MWA to render a corporate entity, as well as its the owners, officers, and supervisory personnel, liable for violations of the FLSA. See *Schneider v. IT Factor Prods.*, 2013 BL 341183, at *4 (E.D. Pa. Dec. 10, 2013), citing *Scholly v. JMK Plastering, Inc.*, 2008 BL 141013, at *4 (E.D. Pa. June 25, 2008).

80.     HomePro is a corporation organized under the laws of the Commonwealth of Pennsylvania, by and through which individuals are employed for a commercial purpose and the financial benefit of HomePro, within the state of Pennsylvania.

81.     Further, as previously averred in this Complaint, and for the same reasons HomePro and Mr. Benedito are individually and collectively an "employer" for purposes of the FLSA, they are individually and collectively an "employer" for purposes of the MWA.

82.     The MWA defines "employee" to include "any individual employed by an employer." 43 P.S. § 333.103(h).

83.     In line with its FLSA counterpart, the definition of "employ" is broadly defined as to "suffer or permit to work."  43 P.S. § 333.103(f).

84.     In determining whether an individual is an "employee" within the MWA, the Commonwealth Court has held the "economic reality test" utilized within the framework of the FLSA is the applicable standard for making such a determination under the MWA. *Commonwealth v. Stuber*, 822 A.2d 870, 873 (Pa. Cmwlth. Ct. 2003).

85.     As previously averred in this Complaint, and for the same reasons Plaintiff is an "employee" for purposes of the FLSA, Plaintiff is also an "employee" for purposes of the MWA.

86.     Consequently, given Defendants' status as an "employer" and Plaintiff's status as an "employee," Defendants were obligated to comply with the minimum wage requirements of the MWA.

87.     However, as averred above, Defendants explicitly refused to pay Plaintiff any wages for the hours that he worked pursuant to the Traveling and Job Site Time Deduction Practice and the Final Paycheck Time Deduction Practice.

88.     Defendants have therefore violated 43 P.S. § 333.104(c).

89.     In addition, the MWA provides for the recovery of attorney's fees and costs when an employer fails to pay an employee in accordance with Section 4(c) of the MWA.

90.     Therefore, Defendants are liable to Plaintiff for actual damages (lost wages), as well as reasonable attorney's fees, costs, and expenses pursuant to 43 P.S. § 333.113.

91.     As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered tangible economic and pecuniary loss in forms including, but not limited to, the deprivation of lawfully owed wages.

WHEREFORE, Plaintiff, Brenton Rodeheaver, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT III
## FAILURE TO REMIT WAGES IN
## VIOLATION OF THE WPCL
## 43 P.S. § 260.1 *et seq.*
### *Plaintiff Brenton Rodeheaver v. Defendants, HomePro Remodelers, LLC and Robert Benedito, individually and jointly*

92.     Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

93.     The WPCL provides the employee with a statutory remedy to enforce his rights where an employer breaches its fundamental contractual obligation to pay wages owed to said employee.  See *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

94.     The "contract" between the employer and the employee governs the determination of the specific wages earned by the employee. *Id.*, citing *Sendi v. NCR Comten, Inc.*, 800 F.2d 1138 (3d Cir. 1986).

95.     This statutory remedy created by the WPCL established both a private cause of action to any employee to whom "any type of wages" are owed and bestowed "any court of competent jurisdiction" with the power to maintain such an action.  43 P.S. § 260.9a(b).

96.     The WPCL defines an "employer" to include every person, "association," or "corporation" and, further, "any agent or officer of any [corporation] employing any person in this Commonwealth."

97.     HomePro is a business "association" and/or "corporation" that employs individuals, including Plaintiff, within the geographic boundaries of the Commonwealth of Pennsylvania and, therefore, is an "employer" under 43 P.S. § 260.2a.

98.     Mr. Benedito is an agent or officer of HomePro who employed Plaintiff to work as a Laborer for Defendant.  As such, Mr. Benedito is also an employer pursuant to 43 P.S. § 260.2a.

99.     As averred repeatedly in this Complaint, Defendants and Plaintiff have effectuated an employment relationship, whereby Plaintiff was an "employee."  This factual reality remains true for purposes of the WPCL as well.

100.    The WPCL defines "wages" to include all "earnings of an employee" and further includes within this definition any "fringe benefits or wage supplements."  43 P.S. § 260.2a.

101.    Plaintiff has sufficiently accrued "wages" within the purview of 43 P.S. § 260.2a, because he engaged in the performance of workplace duties for HomePro in exchange for compensation in the form of an hourly rate commensurate with the time Plaintiff expended in performance of said duties.

102.    Defendants have not provided written notice of conceded or disputed wages associated with Plaintiff pursuant to 43 P.S. § 260.6.

103.    The WPCL imposes a duty on each employer to pay its employees all wages due and owing on established regular paydays (the "Established Payday Procedure"), which is to be designated in advance by the employer.  43 P.S. § 260.3(a).

104.    HomePro's Established Payday Procedure was the disbursement of employee pay on a weekly basis.

105.    Section 260.10 of the WPCL permits an award of liquidated damages equal to 25% of the underlying amount of wages that are due and owing to an employee when an employee fails to pay the wages that are due and owing within 30 days of the Established Payday Procedure and the employer does not lodge a good faith contest or dispute.

106.    Accordingly, per the above statutory provisions, Defendants were legally obligated to provide Plaintiff with his owed wages when he was not paid those wages for thirty (30) days beyond Defendants' Established Payday Procedure.

107.    However, Defendants, by omission, have refused to pay Plaintiff all wages due and owing to him well beyond 30 days of the date of the Established Payday Procedure.

108.    As previously stated, the wages that were, are, and continue to be owing are those that have resulted from Defendants' implementation and utilization of the Traveling and Job Site Time Deduction Practice and the Final Paycheck Time Deduction Practice.

109.    To date, Defendants have not paid Plaintiff the above-mentioned wages that are due and owing to Plaintiff.  As such, Defendants have violated 43 P.S. § 260.10 in failing to pay owed wages to Plaintiff.

110.    Additionally, Defendants have not asserted (and cannot assert) a good faith contest or dispute as to the amount of Plaintiff's disbursed wages.

111.    Although 43 P.S. § 260.3(a) permits an employer to make "deductions provided by law, or as authorized by regulation of the Department of Labor and Industry for the convenience of the employe[e]," *id*., Mr. Benedito had no legal basis whatsoever to deduct wages from the Final Paycheck to account for money allegedly owed for a personal Loan.

112.    Defendants' actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the WPCL, deprivation of his statutory entitlement to accrued wages, and the total amount of Plaintiff's damages.

113.    Consequently, Plaintiff is entitled to an award of liquidated damages pursuant to 43 P.S. § 260.10.

114.    Moreover, 43 P.S. § 260.9a(f) mandates that where a plaintiff obtains a favorable judgment, the plaintiff is entitled, as a matter of right, to an award of attorneys' fees. 43 P.S. § 260.9a(f).

115.    As such, Plaintiff is also entitled to reasonable attorney's fees pursuant to 43 P.S. § 260.9a(f) that were incurred as a result of redressing Defendants' conduct described hereinabove.

116.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered tangible economic and pecuniary loss in forms including, but not limited to, the deprivation of lawfully owed wages.

WHEREFORE, Plaintiff, Brenton Rodeheaver, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT IV
## BREACH OF CONTRACT IN VIOLATION OF
## PENNSYLVANIA COMMON LAW
### *Plaintiff Brenton Rodeheaver vs. Defendant HomePro Remodeling, LLC*

117.    Plaintiff incorporates the allegations contained in in the paragraphs above, as if fully set forth at length herein.

118.    To maintain an action sounding in breach of contract, a plaintiff must establish "(1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages." *Sullivan v. Chartwell Inv. Partners, L.P.*, 873 A.2d 710, 717 (Pa. Super. 2005), citing *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269 (Pa. Super. 2002).

119.    In a bona fide contractual offer, HomePro, acting by and through its agents and/or employees, verbally extended Plaintiff the opportunity to exchange his time and efforts, within the context of gainful employment with HomePro, for, amongst other things, a designated rate of $22.00 per hour.

120.    Further, in its offer of employment, HomePro expressly and unconditionally promised to provide Plaintiff with fifty-five (55) hours of work per week.

121.     Plaintiff conveyed his acceptance of HomePro's offer, mentioned directly above, by and through his course of conduct.  In particular, Plaintiff and HomePro reached a manifestation of assent when Plaintiff performed work for HomePro and HomePro accepted the fruits of Plaintiff's work production.

122.     Consequently, an employment contract was formed between Plaintiff and HomePro, and HomePro assumed the contractual obligation to pay Plaintiff $22.00 per hour.

123.     HomePro further assumed the contractual obligation to provide Plaintiff with fifty-five (55) hours of work per week.

124.     However, as alleged in the Complaint hereinabove, HomePro, by omission, has failed to pay Plaintiff at the above-mentioned rates of pay and therefore breached the employment contract.

125.     In addition, as reiterated throughout this Complaint, HomePro owes Plaintiff approximately eighty (80) hours of wages by implementing and utilizing the Traveling and Job Site Time Deduction Practice and the Final Paycheck Time Deduction Practice.  In accordance with the terms of the employment contract and applicable statutory law, HomePro owes Plaintiff these wages at the contractual rate of $22.00 per hour or, alternatively, the minimum wage rate of $7.25 per hour.

126.     HomePro also breached the employment contract in failing to afford Plaintiff fifty-five (55) hours of work per week.  Instead, HomePro, at most, allowed Plaintiff to work for forty (40) hours and, but-for the conduct of Mr. Tony detailed above, Plaintiff would have worked fifty-five (55) hours a week.

127.   HomePro's actions described hereinabove were the direct and proximate cause that resulted in breaches of the employment contract, deprived Plaintiff of his entitlement to accrued pay, and resulted in lost wages.

128.   As a direct and proximate result of HomePro's conduct described hereinabove, Plaintiff has suffered tangible economic loss in the form of lost pay and is entitled to compensatory and consequential damages for HomePro's contractual breaches, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, Brenton Rodeheaver, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

### COUNT V
### UNJUST ENRICHMENT IN VIOLATION OF
### PENNSYLVANIA COMMON LAW
*Plaintiff Brenton Rodeheaver vs. Defendant HomePro Remodeling, LLC*

129.   Plaintiff incorporates the allegations contained in in the paragraphs above, as if fully set forth at length herein.

130.   Pennsylvania recognizes the equitable doctrine of unjust enrichment wherein the courts may imply a "quasi contract" and require a defendant to compensate the plaintiff for the value of the benefit conferred.  *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 619 (E.D. Pa. 2003), *citing Crawford's Auto Center v. State Police*, 655 A.2d 1064, 1070 (Pa. Cmwlth. 1995).

131.   A plaintiff must show three elements to prove a cause of action of unjust enrichment: (1) a benefit conferred on a defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits by the defendant under such circumstances that it would be inequitable for the defendant to retain the benefit without paying

its value. *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999), citing *Schenck v. K.E. David, Ltd.*, 666 A.2d 327 (Pa. Super. 1995).

132.    Plaintiff conferred a benefit to HomePro by performing workplace duties and devoting hours of work that directly resulted in the financial and operational benefit of HomePro's business.

133.    Indeed, Plaintiff's performance of work hours to which he never received his agreed upon compensation rate, let alone the minimum rate of pay, as detailed and described above, constitutes a benefit that was directly conferred to HomePro.

134.    HomePro retained and accepted the benefit of Plaintiff's labor and services without issue, objection, or delay.

135.    By accepting Plaintiff's labor and services, and failing to pay Plaintiff at the rate of $22.00 per hour or, alternatively, $7.25 per hour, HomePro has been unduly enriched.

136.    As a matter of justice and fairness, it would be manifestly unjust and inequitable for HomePro to retain the benefit of the above-mentioned labor and services hours without paying Plaintiff due compensation.

137.    HomePro's actions described hereinabove were the direct and proximate cause of its unjust enrichment and the damages it owes Plaintiff for retaining a benefit without paying for its value.

138.    As a direct and proximate result of HomePro's conduct described hereinabove, Plaintiff has suffered tangible economic loss in the form of lost back pay and is entitled to recoup the amount of the benefit he conferred upon HomePro and that HomePro unjustly retained.

WHEREFORE, Plaintiff, Brenton Rodeheaver, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## <u>PRAYER FOR RELIEF</u>

For the above-stated reasons, Plaintiff respectfully requests this Honorable Court to enter judgment in his favor, and against HomePro, Mr. Benedito, and/or Defendants and prays for relief as follows:

1.      Declare and find that HomePro, Mr. Benedito, and/or Defendants committed one or more of the following acts:

i.      Violated provisions of the FLSA by failing to pay Plaintiff the minimum rate of wages and did so willfully;

ii.      Violated provision of the MWA in failing to pay Plaintiff the minimum rate of wages and did so willfully;

iii.      Violated provisions of the WPCL in failing to remit wages to Plaintiff and did so willfully;

iv.      Breached its employment contract with Plaintiff in failing to compensate Plaintiff in accordance with terms of the contract;

v.      Was unjustly enriched at Plaintiff's expense and unlawfully retained a benefit without paying for its value; and

2.      Award unpaid minimum wages, compensation at Plaintiff's contractual hourly rate, and/or other compensation denied or lost to Plaintiff by reason of Defendant's unlawful acts;

3.      Award liquidated damages on all compensation due and accruing from the date such amounts were due in equal amounts pursuant to Plaintiff's unpaid minimum wages pursuant to the FLSA, MWA, and/or the WPCL;

4.      Award compensatory and contractual damages as a result of Defendant's breach of contract;

5.      Award pre-judgment and post-judgment interest where accorded by law;

6.      Award reasonable attorney's fees and costs of suit incurred prosecuting these claims;

7.      Award injunctive and other equitable relief as provided by law;

8.      Grant leave to amend to add claims under state and federal laws; and

9.      Award such other and further relief as this Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: December 28, 2022                     By: _____
                                                 Kyle H. Steenland (Pa. I.D. No. 327786)

                                                 The Workers' Rights Law Group, LLP
                                                 Foster Plaza 10
                                                 680 Andersen Drive, Suite 230
                                                 Pittsburgh, PA 15220
                                                 Telephone: 412.910.9592
                                                 Facsimile: 412.910.7510
                                                 kyle@workersrightslawgroup.com

                                                 *Attorney for Plaintiff, Brenton Rodeheaver*

## <u>VERIFICATION</u>

I, <u>Brenton Rodeheaver</u>, have read the foregoing Complaint in Civil Action and verify that

the statements therein are correct to the best of my personal knowledge, information and/or belief.

I understand that this verification is made subject to the penalties of 18 Pa. C.S.A. 4904 relating to

unsworn falsification to authorities, which provides that if I knowingly make false averments, I

may be subject to criminal penalties.

Dated: <u>12 / 29 / 2022</u>

*Brenton rodeheaver*

Plaintiff