IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES STEEL CORPORATION | ) | CIVIL DIVISION |
| | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| QSL CANADA INC. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff United States Steel Corporation ("U. S. Steel"), by and through its undersigned counsel, brings this Complaint against Defendant QSL Canada Inc. ("QSL") (together, the "Parties") and alleges as follows:

## PARTIES

1. Plaintiff U. S. Steel is a Delaware corporation with its headquarters at 600 Grant Street, Pittsburgh, PA 15219.

2. Defendant QSL is a company incorporated under the Canada Business Corporations Act, R.S.C., 1985, c. C-44. QSL is a maritime terminal operator that provides stevedoring, logistics, and storage services throughout North Eastern Canada and the United States, with a principal place of business at 961 boul. Champlain, Quebec, Canada.

## NATURE OF THE ACTION

3. This action is brought by U. S. Steel against QSL related to QSL's breach of its duty to provide stevedoring services to U. S. Steel. QSL admits that it wrongly commingled approximately 24,474 metric tons of iron ore pellets manufactured by U. S. Steel with different

pellets manufactured by a competitor of U. S. Steel, then loaded U. S. Steel's commingled pellets onto the wrong shipping vessel, resulting in U. S. Steel's loss of approximately $4,629,211.47 USD in product.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action based on complete diversity of citizenship between the Parties and because the damages sought exceed $75,000, pursuant to 28 U.S.C. § 1332(a)(1).

5. Complete diversity exists between the Parties because U. S. Steel is incorporated in Delaware with its headquarters in Pennsylvania and QSL is a foreign entity with citizenship in Canada, specifically, the province of Quebec.

6. The amount in controversy exceeds $75,000. U. S. Steel requests damages in excess of $4,629,211.47 USD for, among other losses described herein, the value of U. S. Steel's product that was mishandled and converted by QSL.

7. This Court has personal jurisdiction over the Parties and venue is proper here because of the Parties' express agreement that "[QSL] irrevocably submits itself to the jurisdiction of [this Court], and waives any objection it may now or hereafter have to the placing of venue in [this Court]," as stated in the terms of U. S. Steel's Purchase Order for the stevedoring services at issue, which is the governing contract between the Parties.

8. Through the plain terms of the Parties' contract, QSL has consented to personal jurisdiction in the Commonwealth of Pennsylvania and both the state and federal courts sitting in Pittsburgh, Pennsylvania.

9. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(3) because Defendant is subject to the personal jurisdiction of this Court.

## FACTUAL BACKGROUND

### QSL's Mishandling and Loss of U. S. Steel's Product

10. U. S. Steel and QSL entered into a contract for stevedoring services.

11. The service of stevedoring involves the dockside movement of cargo by stevedores, sometimes also called longshoremen. Such dockside movement includes the loading and unloading of cargo from vessels and the management and storage of that cargo between shipments of that cargo.

12. U. S. Steel is engaged in the mining and production of iron ore pellets from its mining operations located in Minnesota, USA.

13. At issue in this matter are approximately 24,474 metric tons of U. S. Steel's iron ore pellets that were mishandled, contaminated, converted, and lost by QSL in or about July and August 2022 (the "Pellets").

14. QSL's movement, storage, and management of the Pellets was governed by U. S. Steel and QSL's contract for stevedoring services.

15. The Pellets were sourced from U. S. Steel's mining operations in Minnesota.

16. The Pellets were transported from their source and loaded onto a vessel at Two Harbors, Minnesota on the coast of Lake Superior.

17. From Two Harbors, the Pellets were transported to Beauport Terminal in Quebec City to be put into short-term storage by QSL.

18. Stevedoring, logistics, and storage services are among the services that QSL provides at the Beauport Terminal location.

19. The Pellets arrived at the Beauport Terminal on or about July 7, 2022, and QSL was to unload, segregate, and preserve U. S. Steel's pellets until they would be loaded onto a vessel that U. S. Steel nominated.

20. On July 8, 2022, QSL invoiced U. S. Steel approximately $247,513.77 Canadian Dollars related to the Pellets, which QSL mishandled, converted , and/or lost.

21. Beginning on July 7, 2022 and on other dates throughout that month, QSL placed U. S. Steel's Pellets into storage with other iron ore pellets produced by a competitor of U. S. Steel.

22. Then, on or about July 31 through August 1, 2022, QSL commingled U. S. Steel's Pellets by intermixing them and loading all the commingled pellets together into the hold of a vessel named "Magic Thunder."

23. U. S. Steel's Pellets should not have been loaded on the "Magic Thunder," which was a vessel nominated by one of U. S. Steel's competitors.

24. Following QSL's mishandling of U.S. Steel's Pellets, the vessel "Magic Thunder" departed from Beauport Terminal in Quebec City with the comingled cargo and traveled to a location in Germany.

25. Thus, QSL mishandled, converted, and/or lost approximately 24,474 metric tons of U. S. Steel's Pellets, valued at approximately $4,629,211.47 USD.

26. On or about August 8, 2022, U. S. Steel paid approximately $247,513.77 Canadian Dollars to QSL for QSL's stevedoring services related to U.S. Steel's Pellets, not knowing that QSL had actually commingled and then lost the Pellets. U. S. Steel's payment was according to the net 30-day payment term in the Parties' contract.

27. QSL accepted the payment, even though it was not entitled to any payment because of its mishandling and loss of the Pellets.

28. On or about August 17, 2022, QSL provided a report to U. S. Steel, acknowledging that QSL had contaminated thousands of metric tons of U. S. Steel's Pellets by commingling them with other pellets and had loaded U. S. Steel's Pellets onto the wrong vessel. (Exhibit A, QSL's "Preliminary Report").

29. Through subsequent investigation and evaluation, U. S. Steel has concluded that approximately 24,474 metric tons of its Pellets were contaminated, commingled, converted, and/or lost through QSL's conduct.

30. On February 21, 2023, U. S. Steel notified QSL by letter of the actual damages resulting from the commingled and lost Pellets.

31. QSL did not respond to U. S. Steel's February 21, 2023 letter.

32. Instead, on February 24, 2023, QSL again admitted that it mishandled and lost U. S. Steel's Pellets when it filed claims against U. S. Steel in the Courts of Canada. QSL's Canadian filing wrongly attempts to limit damages on the basis of contract terms not agreed to by U. S. Steel and which would not apply in any event. (Exhibit B, QSL's Feb. 24, 2023 Amended Statement of Claim in Canadian Federal Court).

**U. S. Steel's Purchase Order is the Governing Contract for the Services at Issue and Includes QSL's Submission to Jurisdiction in Pennsylvania Under Pennsylvania Law**

33. In or about late 2021 into early 2022, U. S. Steel and QSL entered into discussions concerning QSL's performance of stevedoring services throughout 2022.

34. On or about March 1, 2022, QSL proposed an agreement to govern the stevedoring services at issue.

35. U. S. Steel rejected QSL's proposed agreement. Section 2 of QSL's proposed agreement required execution by signature for the agreement to be valid, and U. S. Steel did not

sign or otherwise execute it. (Exhibit B at pgs. 39, 42, unexecuted proposal attached to QSL's Feb. 24, 2023 Amended Statement of Claim in Canadian Federal Court).

36. U. S. Steel made a counter-offer to QSL regarding QSL's 2022 stevedoring services. On or about March 20, 2022 U. S. Steel provided a Purchase Order, identified as number 21268567 and incorporating terms and conditions (the "Purchase Order"), to QSL for "2022 Stevedoring Charges – Minntac FLUX Pellet Export Program." (Exhibit C, Purchase Order #21268567 with applicable terms and conditions attached).

37. U. S. Steel's Purchase Order provided details regarding pellets passing through the Beauport Terminal and related stevedoring services.

38. U. S. Steel's Purchase Order and its incorporated terms and conditions provided for the manner of acceptance by QSL, including that "any action by [QSL] to perform . . . shall constitute [QSL's] acceptance and form an agreement" and "the provision of . . . services to [U. S. Steel] by [QSL] shall constitute [QSL's] consent to these exclusive terms and conditions . . ." (Exhibit C, at pgs. 1, 5).

39. U. S. Steel's Purchase Order incorporated its terms and conditions as "the exclusive terms and conditions to apply to this agreement" while also stating that "any additional or different terms proposed by [QSL] are hereby rejected" and "[U. S. Steel] hereby objects to and rejects any and all additional or different terms proposed by [QSL]." (Exhibit C, at pgs. 1, 5).

40. QSL accepted U. S. Steel's Purchase Order by—among other actions—planning for, commencing, and providing stevedoring services and by issuing invoices against U. S. Steel's Purchase Order.

41. QSL has historically performed its stevedoring services to U. S. Steel under the terms and conditions of purchase orders issued by U. S. Steel.

42. U. S. Steel's Purchase Order with its terms and conditions is the governing contract for QSL's stevedoring services at issue in this matter.

43. QSL's July 8, 2022 invoice to U. S. Steel for the contaminated and lost Pellets at issue in this matter was expressly invoiced against U. S. Steel's Purchase Order, number 21268567, as accepted by QSL. (Exhibit D, QSL Invoice for "unloading iron ore pellets at the Port of Quebec on July 7, 2022" and citing Purchase Order number 21268567).

44. U. S. Steel's Purchase Order terms and conditions contain a provision called "Governing Law" which provides as follows:

> The purchase order and these terms and conditions shall be governed exclusively by the laws of the Commonwealth of Pennsylvania, excluding Pennsylvania conflict of laws provisions. SELLER IRREVOCABLY AGREES THAT ANY LEGAL ACTION OR PROCEEDING SEEKING THE ENFORCEMENT OR INTERPREATION OF THE PURCHASE ORDER OR THESE TERMS AND CONDITIONS MAY BE BROUGHT IN THE COURTS OF THE COMMONWEALTH OF PENNSYLVANIA IN ALLEGHENY COUNTY, PENNSYLVANIA OR THE FEDERAL DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA IN PITTSBURGH, PENNSYLVANIA. BY ITS ACCEPTANCE OF THE PURCHASE ORDER SELLER HEREBY IRREVOCABLY SUBMITS ITSELF TO THE JURISDICTION OF ANY SUCH COURTS, AND WAIVES ANY OBJECTION IT MAY NOW OR HEREAFTER HAVE TO THE PLACING OF VENUE IN ANY SUCH COURTS AND RIGHT TO REMOVE ANY SUCH ACTION OR PROCEEDING TO ANOTHER COURT.

(Exhibit C, at pg. 7).

## CAUSES OF ACTION
### COUNT I – Declaratory Relief

45. Paragraphs 1 through 44 are hereby incorporated by reference as if fully set forth at length herein.

46. U. S. Steel respectfully requests that this Court render a declaratory judgment that the governing terms of the Parties' contractual relationship as to the stevedoring services at issue are U. S. Steel's Purchase Order and the terms and conditions incorporated in that Purchase Order.

47. This Court can properly declare that the Parties' conduct—including U. S. Steel's rejection of QSL's proposal, U. S. Steel's counter-offer of its Purchase Order, and QSL's acceptance by performance and otherwise—makes U. S. Steel's Purchase Order and its incorporated terms and conditions the governing contract over this dispute.

48. As such, the terms of U. S. Steel's Purchase Order and its incorporated terms and conditions, specifically the "Governing Law" provision, make it proper for this Court to exercise jurisdiction over this matter and these Parties. Moreover, the terms and conditions of U. S. Steel's Purchase Order will govern the liability of QSL for the damages that QSL admits it has caused to U. S. Steel.

WHEREFORE, U. S. Steel respectfully requests that this Court enter a judgment declaring that U. S. Steel's Purchase Order, number 21268567, along with its incorporated terms and conditions, is the governing contract between U. S. Steel and QSL applicable to this controversy and that QSL's proposed but unexecuted agreement of approximately March 1, 2022 was rejected and is void and invalid. U. S. Steel also respectfully requests that this Court grant costs to U. S. Steel and all other relief to U. S. Steel that the Court deems just and proper.

### COUNT II – Breach of Contract

49. Paragraphs 1 through 48 are incorporated by reference as if fully set forth at length herein.

50. U. S. Steel's Purchase Order and its terms and conditions are the governing contract in this dispute.

51. U. S. Steel has performed as required under the Purchase Order. U. S. Steel is not and has not been in breach of the Purchase Order.

52. Under the Purchase Order, QSL had an obligation to perform stevedoring services for U. S. Steel's Pellets at the Beauport Terminal.

53. U. S. Steel's Purchase Order terms and conditions required, among other things, that "[QSL] agrees to properly pack, load and ship goods in accordance with the requirements of [U. S. Steel] and involved carriers in a manner that secures safe transportation at the lowest transportation cost" and "to route shipments in accordance with [U. S. Steel's] instructions." (Exhibit C, at pg. 5).

54. U. S. Steel's Purchase Order terms and conditions also required that "[QSL] expressly warrants to [U. S. Steel] that all . . . services covered by the purchase order will strictly conform to the specifications, drawings, samples or descriptions furnished to or by [U. S. Steel]" and will be of "good material and workmanship and free of defect." (Exhibit C, at pg. 6).

55. QSL's performance was to be reasonable, workmanlike, according to industry standards and applicable laws, and in accord with good faith and fair dealing.

56. QSL failed to conduct its stevedoring services in accordance with the terms of the Parties' agreement when it commingled, converted, and lost approximately 24,474 metric tons of U. S. Steel's Pellets during the stevedoring process.

57. Among other things, QSL's conduct concerning the Pellets was not in accord with U. S. Steel's requirements and instructions, did not properly pack, load, and ship the Pellets, did not assure correct transportation of the Pellets, did not properly route the Pellets, did not conform to U. S. Steel's specifications, was not workmanlike or according to applicable standards, was not

free from defect, and did not accord with a reasonable understanding of the Purchase Order or with good faith and fair dealing.

58. QSL's conduct described herein breached the Parties' contract for QSL's stevedoring services, as set forth in U. S. Steel's Purchase Order and its terms and conditions.

59. QSL's breach caused U. S. Steel to suffer actual damages in the amount of approximately $4,629,211.47 USD, the value of the lost Pellets.

60. QSL also breached the Parties' contract for QSL's stevedoring services, as set forth in U. S. Steel's Purchase Order and its terms and conditions, by failing to timely disclose the commingling and loss of U. S. Steel's Pellets and accepting U. S. Steel's payment related to the Pellets that QSL knew it had mishandled, converted, and lost.

61. QSL's breach caused additional actual damages to U. S. Steel of $247,513.77 Canadian Dollars, the amount U. S. Steel paid and QSL accepted for stevedoring services.

WHEREFORE, U. S. Steel respectfully requests that this Court award it monetary damages in excess of $75,000, and that this Court grant costs and interest to U. S. Steel and all other relief to U. S. Steel that the Court deems just and proper.

### COUNT III – Conversion/Trespass to Chattel

62. Paragraphs 1 through 61 are incorporated by reference as if fully set forth at length herein.

63. In the alternative, U. S. Steel has suffered damages in the amount of the full value of its chattel, the Pellets, based on QSL's improper dispossession of and intermeddling with that chattel.

64. QSL contracted to provide stevedoring services related to the unloading, storage, and re-loading of the Pellets between vessels at the Beauport Terminal in Quebec City.

65. QSL acted intentionally to exercise control over the Pellets by unloading, storing, managing, and loading them.

66. That intentional exercise of control was permissible only in so far as it was done in compliance with the limited services agreed to by U. S. Steel and QSL.

67. QSL, however, acted improperly and without U. S. Steel's consent when it commingled and contaminated U. S. Steel's Pellets on or about July 31 through August 1, 2022 and loaded the Pellets on to the wrong vessel.

68. As a result of QSL's improper exercise of control, U. S. Steel was completely deprived of the value of approximately 24,474 metric tons of Pellets.

69. Accordingly, U. S. Steel is entitled to actual damages for the value of the Pellets that were mishandled, converted, and lost, approximately $4,629,211.47 USD.

WHEREFORE, U. S. Steel respectfully requests that this Court award it monetary damages in excess of $75,000, and that this Court grant costs and interest to U. S. Steel and all other relief to U. S. Steel that the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff United States Steel Corporation respectfully requests that this Court enter a judgment against Defendant, granting United States Steel Corporation the relief requested herein.

## JURY DEMAND

Plaintiff United States Steel Corporation demands a trial by jury on all issues to triable.

<div style="display:flex; justify-content:space-between;">
<div>Dated: April 21, 2023</div>
<div>Respectfully submitted,

/s/ David M. Belczyk
David M. Belczyk (Pa. ID No. 204214)
PORTER WRIGHT MORRIS & ARTHUR LLP
Six PPG Place, Third Floor
Pittsburgh, PA 15222
(412) 235-4500
dbelczyk@porterwright.com

*Attorney for Plaintiff, United States Steel Corporation*</div>
</div>

**Error! Unknown document property name.**