## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

IN RE SUBPOENA DUCES TECUM
directed to non-party Plants and Goodwin,
Inc. in connection with

*McEvoy, et al. v. Diversified Energy Company
PLC, et al.*, N.D. W. Va., Case No. 5:22-cv-
00171-JPB

Miscellaneous Action No. _____

---

## BRIEF IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA
## *DUCES TECUM*

---

Daniel T. Brier (PA ID 53248)
dbrier@mbklaw.com
John B. Dempsey (PA ID 88017)
jdempsey@mbklaw.com
Timothy E. Gates (PA ID 202305)
tgates@mbklaw.com
Myers, Brier @ Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
Phone:  570-342-6100

Daniel Donovan, P.C. (pro hac vice forthcoming)
daniel.donovan@kirkland.com
Ragan Naresh, P.C. (*pro hac vice* forthcoming)
ragan.naresh@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: 202-389-5267

Kenneth Young (*pro hac vice* forthcoming)
kenneth.young@kirkland.com
KIRKLAND & ELLIS LLP
609 Main Street
Houston, TX 77002
Phone: 713-836-3600

***Counsel for Diversified Energy Company PLC, Diversified Production LLC, and
Diversified Ga & Oil Corporation***

## CONTENTS

INTRODUCTION AND BACKGROUND ................................................................. 1

LEGAL STANDARD .............................................................................................. 3

ARGUMENT ............................................................................................................ 4

I.  PLANTS MUST PRODUCE ALL DISPUTED DOCUMENTS BECAUSE PLANTS MADE ONLY BOILERPLATE OBJECTIONS ......................... 4

II.  PLANTS MUST PRODUCE DOCUMENTS REGARDING DIVERSIFIED ........... 6

    A.  Request 1 Calls for Relevant Data Because It Seeks Substantive Information About a Party and Impeachment Materials ......................... 6

    B.  Request 1 Is Not Objectionable ................................................................. 8

III.  PLANTS MUST PRODUCE ITS BID PACKAGES FOR ITS WELL-PLUGGING AND RESTORATION SERVICES ........................................... 8

    A.  Request 2 Calls for Relevant Data Because It Seeks Information About Well-Plugging Costs and Impeachment Materials ........................ 8

    B.  Request 2 Is Not Objectionable ............................................................... 10

IV.  PLANTS MUST PRODUCE DOCUMENTS SUFFICIENT TO SHOW THE WELLS IT HAS PLUGGED OR ABANDONED ....................................... 11

    A.  Request 3 Calls for Relevant Data Because It Seeks Information About Well-Plugging Costs and Impeachment Materials ...................... 11

    B.  Request 3 Is Not Objectionable ............................................................... 12

V.  PLANTS MUST PRODUCE ITS PLUGGING BUDGET AND COST DATA ....... 13

    A.  Requests 4, 5, 6, and 7 Call For Relevant Data Because They Seek Information About Well-Plugging Costs and Impeachment Materials ............... 14

    B.  Requests 4, 5, 6, and 7 Are Not Objectionable .................................... 16

CONCLUSION ....................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agilysys, Inc. v. Gordon,*
    2008 WL 11377736 (N.D. Ohio July 3, 2008) ................................................................10, 11

*Beckner v. Bayer Cropscience, LP,*
    2006 WL 6906942 (S.D. W. Va. June 28, 2006)................................................................9, 16

*Ceuric v. Tier One, LLC,*
    325 F.R.D. 558 (W.D. Pa. 2018) ........................................................................................4, 5

*Deemac Servs., LLC v. Republic Steel,*
    2022 WL 3716625 (W.D. Pa. Aug. 9, 2022) ........................................................................3

*Dockery v. Heretick,*
    2021 WL 268497 (E.D. Pa. Jan. 27, 2021))..........................................................................3

*Frame v. Erie Metro. Transit Auth.,*
    2023 WL 3043998 (W.D. Pa. Apr. 21, 2023) .......................................................................6

*Fuhs v. McLachlan Drilling Co.,*
    2018 WL 5312760 (W.D. Pa. Oct. 26, 2018) .......................................................................4

*Galloway v. Walton,*
    2021 WL 4595153 (W.D. Pa. Oct. 6, 2021) .........................................................................3

*In re Auto. Refinishing Paint Antitrust Litig.,*
    2006 WL 1479819 (E.D. Pa. May 26, 2006) ........................................................................3

*In re Urethane Antitrust Litig.,*
    261 F.R.D. 570 (D. Kan. 2009)............................................................................................4

*J&M Indus., Inc. v. Raven Indus., Inc.,*
    2018 WL 1427952 (D. Kan. Mar. 22, 2018) .......................................................................6

*Liguria Foods, Inc. v. Griffith Lab'ys, Inc.,*
    320 F.R.D. 168 (N.D. Iowa 2017) .......................................................................................4

*Maier v. Belfor USA Grp., Inc.,*
    2016 WL 11745953 (N.D. Ga. May 24, 2016).....................................................................7

*Morrison v. Philadelphia Hous. Auth.,*
    203 F.R.D. 195 (E.D. Pa. 2001)...........................................................................................3

*Noveletsky v. Metro. Life Ins. Co.*,
  2012 WL 11802597 (D. Me. Oct. 19, 2012) ............................................................................7

*Parisi v. State Farm Mut. Auto. Ins. Co.*,
  2017 WL 4403326 (W.D. Pa. Oct. 2, 2017) ...........................................................................5

*Rice v. Nathan Rice, Inc.*,
  2021 WL 9350613 (W.D. Pa. Nov. 3, 2021) ..........................................................................5

*Rudolf v. Am. Int'l Grp., Inc.*,
  2022 WL 2757684 (W.D. Pa. July 14, 2022) ......................................................................3, 4

*Sierra Club v. GenOn Power Midwest LP*,
  2020 WL 7240367 (W.D. Pa. Oct. 19, 2020) ...........................................................10, 13, 16

*Thompson v. Allstate Prop. & Cas. Ins. Co.*,
  2019 WL 438367 (N.D. W. Va. Feb. 4, 2019) .......................................................................7

*U.S. v. Abbott Lab'ys*,
  2016 WL 4247429 (E.D. Pa. Aug. 11, 2016) .........................................................................3

*U.S. v. Abel*,
  469 U.S. 45 (1984) ..................................................................................................................7

**Rules**

Fed. R. Civ. P. 26(b)(1) ....................................................................................................................3

Fed. R. Civ. P. 37 ........................................................................................................................3, 4

Fed. R. Civ. P. 45(d)(3) ....................................................................................................................3

## INTRODUCTION AND BACKGROUND

Diversified Energy Company PLC, Diversified Production LLC, and Diversified Gas & Oil Corporation (collectively, "Diversified") instituted this proceeding so the Court could compel Plants and Goodwin, Inc. ("Plants") to comply with Diversified's subpoena directing Plants to produce materials related to its well-plugging services and the bias of an expert witness, its Chief Operating Officer Luke Plants. A true and correct copy of the subpoena is attached hereto as Exhibit A. Diversified served its subpoena in service of *McEvoy, et al. v. Diversified et. al* (Case No. 5:22-cv-00171), a case pending in the Northern District of West Virginia. Diversified requires this Court's assistance to obtain documents from Plants because the subpoena requires compliance in the Western District of Pennsylvania. *See* Fed. R. Civ. P. 45(d)(3). Accordingly, Diversified asks the Court to compel Plants to produce documents responsive to Requests 1 through 7 of the subpoena.

The underlying *McEvoy* case is based on allegedly abandoned wells in West Virginia, part of the Appalachian Basin. *See* Compl. (*McEvoy* ECF No. 96) ¶¶ 7, 104. The *McEvoy* Plaintiffs assert that West Virginia Code section 22-6-19 imposes a duty on Diversified to plug wells on their property. *See id.* at ¶ 78. Based on this duty, the *McEvoy* Plaintiffs assert claims for trespass, nuisance, and negligence against Diversified. *Id.* ¶¶ 108–110. The *McEvoy* Plaintiffs also allege voidable transactions between Diversified and EQT. *See id.* ¶¶ 5–6. Their theory is that Diversified cannot afford to plug the wells and incorrectly calculates its assets and liabilities, in part, based on inaccurate accounting of well plugging costs and the timeline in which the wells will come due for plugging. *Id.* ¶¶ 6–11.

The *McEvoy* Plaintiffs retained Luke Plants, the Chief Operating Officer of Plants, as their proposed expert witness. *See* Memorandum (*McEvoy* ECF No. 255) at 2 (stating

"Defendants are aware that Plaintiffs have retained Luke Plants as an expert regarding well-plugging matters at issue in this case" and noting "his well plugging business Plants and Goodwin").   Plants is a direct competitor of Diversified in the plugging of wells in the Appalachian Basin.  *See* Ex. C (Maddox affidavit) ¶ 3.  In *McEvoy*, he will be reviewing issues related to the costs of plugging wells.  *See* Memorandum (*McEvoy* ECF).

Both Plaintiffs and Diversified served subpoenas related to the plugging of wells. Plaintiffs served two subpoenas to third parties that plug wells, including a Diversified subsidiary.  *See* Certificate of Service (*McEvoy* ECF No. 250-1) at 1 (seeking documents from "NWP PA, LC f/k/a Nick's Well Plugging, LLC"); Certificate of Service (*McEvoy* ECF No. 173-1) at 1 (seeking documents from "Next LVL Energy, LLC").  Plaintiffs requested invoices for plugging services, documents to support plugging budgets, bid packages, a schedule of plugged wells, and annual financial statements.  *See* Certificate of Service (*McEvoy* ECF No. 250-1) at 7 (seeking "[b]id packages that You have submitted to local, state, and federal agencies to bid for plugging, decommissioning, and restoration work from 2014 to the present").  Diversified sought similar materials from Plants, both to rebut Plaintiffs' claims about Diversified's cost and time estimates and to impeach Mr. Plants.  *See generally* Ex. B (Plants Discovery Resp.).  Specifically, Diversified asked for documents about Diversified, bids for plugging services, the identity of the wells Plants plugged, and budgets, actual costs, supporting documentation, and communications about Plants's plugging services.  *See generally id.*

Following receipt of Diversified's subpoena, and unlike other subpoena recipients, Plants refused to produce documents.  *See generally id.*  Thus, Diversified reached out to Plants for a discovery conference.  *See* Ex. D (Email Thread).  During that discussion, Plants again refused to

produce.[1] Afterward, Plants joined the *McEvoy* Plaintiffs' motion to quash the subpoena. *See generally* Motion to Join (*McEvoy* ECF No. 258). That motion was improperly filed with the Northern District of West Virginia, rather than this Court, *see* Fed. R. Civ. P. 45(d)(3), an argument Diversified will assert in response to the motion. Faced with Plants's refusal to produce and Plaintiffs' improper motion to quash, Diversified had no choice but to ask this Court to order Plants to produce documents responsive to Requests 1 through 7 of the subpoena.

## LEGAL STANDARD

"Courts have 'broad discretion to fashion discovery orders' and often give liberal treatment to discovery rules." *Deemac Servs., LLC v. Republic Steel*, 2022 WL 3716625, at *1 (W.D. Pa. Aug. 9, 2022) (quoting *Dockery v. Heretick*, 2021 WL 268497, at *2 (E.D. Pa. Jan. 27, 2021)). "Federal Rule of Civil Procedure 26 governs the discovery process, which allows the parties to obtain 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case'" *Id.* (quoting Fed. R. Civ. P. 26(b)(1)). "Relevance in this context has been 'construed broadly to encompass any matter that could bear on, or that could reasonably lead to other matter that could bear on any issue that is or may be in the case.'" *Id.* (quoting *U.S. v. Abbott Lab'ys*, 2016 WL 4247429, at *2 (E.D. Pa. Aug. 11, 2016)). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Galloway v. Walton*, 2021 WL 4595153, at *1 (W.D. Pa. Oct. 6, 2021) (quoting Fed. R. Civ. P. 26(b)(1)).

"'[W]here a party receives evasive or incomplete answers to a discovery request, they are permitted to bring a motion to compel disclosure' under [Federal] Rule [of Civil Procedure] 37." *Deemac Servs., LLC*, 2022 WL 3716625, at *1 (quoting *In re Auto. Refinishing Paint Antitrust*

---

[1]   Plants represented documents responsive to some requests do not exist, meaning only Requests 1 through 7 are at issue.

*Litig.*, 2006 WL 1479819, at *2 (E.D. Pa. May 26, 2006)). "A party moving to compel discovery bears the initial burden of proving the relevance of the requested information." *Rudolf v. Am. Int'l Grp., Inc.*, 2022 WL 2757684, at *1 (W.D. Pa. July 14, 2022) (citing *Morrison v. Philadelphia Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001)). "Once that initial burden is met, 'the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under [Rule] 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Id.* (citing *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009)).

**<u>ARGUMENT</u>**

## I.   PLANTS MUST PRODUCE ALL DISPUTED DOCUMENTS BECAUSE PLANTS MADE ONLY BOILERPLATE OBJECTIONS

The Court should grant this motion because Plants asserted boilerplate objections. "[T]he duty to provide reasoning and specificity with each objection falls upon the party objecting to discovery requests." *Ceuric v. Tier One, LLC*, 325 F.R.D. 558, 561 (W.D. Pa. 2018) (cleaned up). "Simply objecting to requests as overly broad, burdensome, oppressive and irrelevant, without showing specifically how each request is not relevant or how each question is overly broad, burdensome, or oppressive, is inadequate to voice a successful objection." *Id.* (cleaned up). In other words, "the use of boilerplate objections is a disfavored practice . . . ." *Fuhs v. McLachlan Drilling Co.*, 2018 WL 5312760, at *22 (W.D. Pa. Oct. 26, 2018). And "the idea that such general or 'boilerplate' objections preserve any objections is an 'urban legend.'" *Id.* (quoting *Liguria Foods, Inc. v. Griffith Lab'ys, Inc.*, 320 F.R.D. 168, 185–87 (N.D. Iowa 2017)).

Plants's objections all state the following: "In addition to the above General Objections, [Plants] objects to this Request on the grounds that it is vague, overly broad, and unduly

burdensome, and because it calls for the disclosure of documents that are not relevant to any party's claims or defenses." Ex. B (Plants Discovery Resp.) at 3–6.  For several Requests, Plants added it "objects to this Request on the grounds that it seeks the production of documents that are equally available to Diversified through publicly available sources, and to the extent such information is not publicly available, the Request calls for the disclosure of highly confidential and proprietary business information to a competitor of [Plants]." *Id.*  This language is the total of Plants's objections and it lacks any basis, explanation, or link to the Request.

Plants's objections do not provide the requisite specificity and must be deemed waived. Although Plants recites legal objections (*e.g.*, vague, overly broad, etc.), Plants never offers any explanation or detail about what makes any Request objectionable.  For example, Plants objects that the following request is vague without identifying any ambiguity: "Bid packages that You have submitted to local, state, and federal agencies to bid for plugging, decommissioning, and restoration work from 2016 to the present." *Id.* at 5.  The materials called for by this Request are obvious, and Plants never attempts to explain ***how*** the Request is supposedly vague.

All of Plants's other objections are the same; they are legal assertions untethered from the Request's text, the *McEvoy* case's facts, or any supporting detail.  In other words, they are boilerplate.  *See Rice v. Nathan Rice, Inc.*, 2021 WL 9350613, at *6 (W.D. Pa. Nov. 3, 2021) (characterizing as "boilerplate" objections made "with no substantive explanation").  Because boilerplate objections are insufficient, the Court should grant Diversified's motion.  *See Ceuric*, 325 F.R.D. at 561 ("[T]he boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient.") (quoting *Parisi v. State Farm Mut. Auto. Ins. Co.*, 2017 WL 4403326, at *1 (W.D. Pa. Oct. 2, 2017)).

## II.     PLANTS MUST PRODUCE DOCUMENTS REGARDING DIVERSIFIED

Even setting aside Plants's boilerplate objections, the Court should grant Diversified's motion.  Starting with Request 1, Diversified seeks information relevant to the reasonableness of well-plugging cost estimates in the Appalachian Basin and the credibility of Mr. Plants, Plants's Chief Operating Officer and Plaintiffs' proposed expert.  Plants has done nothing to show that the materials are unduly burdensome or otherwise shielded from production.

### A.     Request 1 Calls for Relevant Data Because It Seeks Substantive Information About a Party and Impeachment Materials

Request 1 seeks information in Plants's possession that is about Diversified, the *McEvoy* defendant.  Specifically, the full text and corresponding objection to Request 1 is below:

> 1.     Documents and communications in your possession, custody, or control regarding Diversified from July 1, 2016, to the present.
>
> **SPECIFIC OBJECTIONS:**  In addition to the above General Objections, P&G objects to this Request on the grounds that it is vague, overly broad, and unduly burdensome, and because it calls for the disclosure of documents that are not relevant to any party's claims or defenses.

> **RESPONSE:**  P&G stands on its objections and will not be producing any responsive documents to the extent they exist.

Ex. B (Plants Discovery Resp.) at 4-5.  As a matter of black-letter law, a discovery request seeking materials about a party to the litigation is appropriate.  Diversified's request is identical to those that courts have upheld.  *See Frame v. Erie Metro. Transit Auth.*, 2023 WL 3043998, at *1 (W.D. Pa. Apr. 21, 2023) (compelling a defendant to "certify the production of," among other things, "all emails or other internal documents or communications concerning Plaintiff"); *J&M Indus., Inc. v. Raven Indus., Inc.*, 2018 WL 1427952, at *9 (D. Kan. Mar. 22, 2018) (compelling a plaintiff to produce "communications about Defendant").

This is especially true here because Plants is both a direct competitor of Diversified's well-plugging business *and* the employer of Mr. Plants, the *McEvoy* Plaintiffs' proposed expert

witness.  *See* Ex. C (Maddox affidavit) ¶ 3.  Given these facts, it is likely that any Plants document or communication that is related to Diversified will discuss either: (1) Diversified's well-plugging operations or business model or (2) the lawsuit in which Mr. Plants is retained as an expert witness.  Either category is relevant.  For example, regarding the first category, Plants may have internal documents bemoaning their ability to plug wells as cheaply as Diversified and assessments of Diversified's practices as potentially worth emulating.

For the second category, documents from the employer of Plaintiffs' expert witness discussing the *McEvoy* lawsuit are plainly relevant in that case.  Additionally, the requested materials may reflect a bias against Diversified.  For example, perhaps Plants permitted Mr. Plants to work as Plaintiffs' expert witness to harm their business competitor, Diversified.  Such materials are relevant.  *See, e.g.*, *Noveletsky v. Metro. Life Ins. Co.*, 2012 WL 11802597, at *4 (D. Me. Oct. 19, 2012) (noting "that information on expert compensation beyond that required to be disclosed automatically can be relevant to the assessment of expert bias and/or credibility, justifying its production"); *Maier v. Belfor USA Grp., Inc.*, 2016 WL 11745953, at *3 (N.D. Ga. May 24, 2016) ("That allocation is relevant to expert compensation and bias, as the Maiers have designated some of these contractors as expert witnesses, and to the issue of damages."); *Thompson v. Allstate Prop. & Cas. Ins. Co.*, 2019 WL 438367, at *3 (N.D. W. Va. Feb. 4, 2019) ("[P]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.") (quoting *U.S. v. Abel*, 469 U.S. 45, 52 (1984)).

Accordingly, Request 1 seeks materials directly relevant both to Plaintiffs' claims about the cost of well-plugging and also implicates the credibility of their proposed expert witness.

### B.      Request 1 Is Not Objectionable

Given Plants's refusal to explain its objections, it is difficult to engage them in detail. Thankfully, the Request is sufficient to *prima facie* rebut Plants's objections.  For Request 1, Plants's first assertion is vagueness, but the Request could not be plainer.  It seeks "documents and communications . . . regarding Diversified . . . ."  Ex. B (Plants Discovery Resp.) at 4.  There is nothing about this that is confusing or unclear.

Plants is equally mistaken when it asserts overbreadth and undue burden objections. Plants is Diversified's competitor.  *See* Ex. C (Maddox affidavit) ¶ 3.  Diversified and Plants do not regularly interact with each other.  Because of this, it is unlikely Request 1 will encompass many documents; Plants has no occasion to discuss Diversified.  The only reasons Diversified can think of that would require Plants to discuss Diversified would either be relevant to Plaintiffs' claims (*i.e.*, discussion of Diversified's business model and techniques) or to impeachment (*i.e.*, discussion about animosity toward Diversified).  In other words, the burden should be minimal, the potential to uncover relevant materials is high, and there should be few (if any) non-relevant materials—Plants's objections to Request 1 are incorrect.

## III.    PLANTS MUST PRODUCE ITS BID PACKAGES FOR ITS WELL-PLUGGING AND RESTORATION SERVICES

Request 2 also seeks relevant information that Plants must produce because it bears directly on information related to the cost of well plugging in the Appalachian Basin.  This is a metric the *McEvoy* Plaintiffs, who retained Mr. Plants, allege Diversified does not calculate correctly.  Because the Request requires the disclosure of well-plugging costs in the Appalachian Basin it bears on the merits of Plaintiffs' claims and, to the extent it shows an inconsistency with Mr. Plants's criticism of Diversified, it is relevant for impeachment.

### A.      Request 2 Calls for Relevant Data Because It Seeks Information About Well-Plugging Costs and Impeachment Materials

The Court should also require Plants to produce documents responsive to Request 2. This Request seeks the bid packages Plants submitted to various government agencies seeking work plugging, decommissioning, or restoring wells. The full text and corresponding objection to Request 2 is below:

> 2.    Bid packages that You have submitted to local, state, and federal agencies to bid for plugging, decommissioning, and restoration work from 2016 to the present.
>
> **SPECIFIC OBJECTIONS:** In addition to the above General Objections, P&G objects to this Request on the grounds that it is vague, overly broad, and unduly burdensome, and because it calls for the disclosure of documents that are not relevant to any party's claims or defenses. Also, P&G objects to this Request on the grounds that it seeks the production of documents that are equally available to Diversified through publicly available sources.
>
> **RESPONSE:** P&G stands on its objections and will not be producing any responsive documents to the extent they exist.

Ex. B (Plants Discovery Resp.) at 5. These materials are relevant both to Plaintiffs' claims and to Mr. Plants's credibility.

For example, the bid packages are relevant to Plaintiffs' claims because they show the amounts another well plugging company, in the same operations area (the Appalachian Basin), is willing to expend to plug a well, a detail that can be used to undermine Plaintiffs' assertions about Diversified's well plugging estimates. It also pertains to the amount of income a well-plugging company can reasonably expect from the bidding process, a detail that can be used to undermine Plaintiffs' assertions that Diversified's income is insufficient to pay its debts. These materials are also relevant to the credibility of Mr. Plants for similar reasons; if any of the information in his company's plugging bids conflicts with his conclusions about what Diversified should be doing, or should have done, for its own plugging, it will devastate Mr. Plants's credibility. Thus, the requested materials must be produced. *See Beckner v. Bayer*

*Cropscience, LP*, 2006 WL 6906942, at *4 (S.D. W. Va. June 28, 2006) (finding "the potential for impeachment [of an expert] justifies production of the requested materials").

### B.     Request 2 Is Not Objectionable

For Request 2, Plants asserted more unspecific objections.  Each objection (vagueness, overbreadth, undue burden, and public availability) must be rejected.

*First*, the Request is not vague, and Plants does not point to any aspect of the Request it allegedly cannot comprehend.  To the extent Plants had any confusion, it should have identified it during the parties' meet and confer, but it did not—because there is no vagueness.  Request 2 plainly seeks bid materials submitted to government agencies for the purpose of bidding on well plugging, decommissioning, or restoration jobs.

*Second*, the Request is not overly broad or unduly burdensome.  The *McEvoy* court has found that "bids submitted by Diversified to plug orphan wells would implicate Diversified's assets and liabilities," and, based on this, that court overruled Diversified's own undue burden objection—which was supported by an actual evidentiary affidavit—to a request for its own bids. Order (*McEvoy* ECF No. 180) at 16.  Indeed, because of the need to understand the economics of bidding on well plugging, Plaintiffs submitted the same data request to other third parties.  *See* Certificate of Service (*McEvoy* ECF No. 250-1) at 1 (seeking documents from "NWP PA, LC f/k/a Nick's Well Plugging, LLC"); Certificate of Service (*McEvoy* ECF No. 173-1) at 1 (seeking documents from "Next LVL Energy, LLC").  Moreover, this Request seeks a definite and limited category of documents (*i.e.*, bid packages) that should be saved in a particular location, and should not require something so simple as even an email search.  This Request seeks materials that all parties acknowledge as having great utility and will not be difficult to produce.

*Third*, Plants's public availability argument highlights that its objections are boilerplate. Plants provides no indication as to where these bid packages are found publicly.  Regardless,

public availability of information is not grounds to resist discovery. *See Sierra Club v. GenOn Power Midwest LP*, 2020 WL 7240367, at *1 (W.D. Pa. Oct. 19, 2020) ("[T]he fact that some of the information sought in the Requests at issue may be available to the public does not absolve GenOn from its obligation to respond to Sierra's discovery requests."); *Agilysys, Inc. v. Gordon*, 2008 WL 11377736, at *5 (N.D. Ohio July 3, 2008) (compelling production despite argument that requested discovery was "available . . . in [the plaintiff's] public filings").

Plants's unsupported objections are unsupportable. The Court should grant Diversified's motion and require Plants to produce materials responsive to Request 2.

## IV.   PLANTS MUST PRODUCE DOCUMENTS SUFFICIENT TO SHOW THE WELLS IT HAS PLUGGED OR ABANDONED

Plants cannot complain about Request 3, which seeks only "[d]ocuments ***sufficient to show***" the wells it serviced over several years. Ex. B (Plants Discovery Resp.) at 5 (emphasis added). Plants can choose to produce whatever is most convenient, so long as the production identifies the wells for which Plants has provided plugging or abandonment services. The information is relevant because it provides support and context related to the costs to plug certain types of wells and the rate of plugging wells and, as with all the Requests, can be used to impeach Plaintiffs' proposed expert, Mr. Plants. The Court should grant Diversified's motion.

### A.   Request 3 Calls for Relevant Data Because It Seeks Information About Well-Plugging Costs and Impeachment Materials

Request 3 expressly seeks only the minimum data necessary (*i.e.*, documents sufficient to show) to identify the wells for which Plants has provided plugging and abandonment services. Specifically, the full text and corresponding objection to Request 3 is below:

> 3.     Documents sufficient to show all wells for which you provided plug and abandonment services (as referenced on your website at https://plants goodwin.com/our-services/plug-abandonment) by You by year since the year 2016, including API number.
>
> **SPECIFIC OBJECTIONS:** In addition to the above General Objections, P&G objects to this Request on the grounds that it is vague, overly broad, and unduly burdensome, and because it calls for the disclosure of documents that are not relevant to any party's claims or defenses.  Also, P&G objects to this Request on the grounds that it seeks the production of documents that are equally available to Diversified through publicly available sources, and to the extent such information is not publicly available, the Request calls for the disclosure of highly confidential and proprietary business information to a competitor of P&G.
>
> **RESPONSE:**  P&G stands on its objections and will not be producing any responsive documents to the extent they exist.

Ex. B (Plants Discovery Resp.) at 5.  The wells that Plants plugged or otherwise serviced by year are relevant because they can show the context for the cost data otherwise requested in the plugging of wells, as well as the rate at which another well plugging company, in the same area, plugs wells, a detail that can be used to undermine Plaintiffs' assertions about the impossibility of Diversified plugging its own wells.  *See* Compl. (*McEvoy* ECF No. 96) ¶ 66 ("Diversified estimates the economic lives of its wells will last through 2095, allowing it to delay its cleanup costs for decades.  In fact, it will never have sufficient assets to meet its plugging liabilities.").  Furthermore, if Mr. Plants opines on the cost of plugging a certain type of well or on Diversified being incapable of plugging wells at a certain rate using a certain technique, but his own company's operations undermine that opinion, such materials would be relevant.

## B.     Request 3 Is Not Objectionable

Plants refused to produce any documents in response to Request 3, arguing the Request is vague, overly broad, unduly burdensome, and somehow seeks information that is both public and highly confidential.  *See* Ex. B (Plants Discovery Resp.) at 5.

*First*, the Request is comprehensible.  It seeks the identification of the wells for which Plants has provided plugging and abandonment services; as a well-plugging company, Plants surely understands what this Request encompasses.

*Second*, the Request is not overly broad or unduly burdensome.  The Request expressly seeks only "documents sufficient to show" the requested information.  *Id.*  In other words, it does not seek a production of all documents related to the identification of the wells; it seeks only those materials that Plants determines will fully identify all wells it has serviced.  This could be as little as a single computer report in spreadsheet format, or any other minimally burdensome production Plants identifies as appropriate for providing the requested information.  It is difficult to imagine a less burdensome way to ask for the requested information.

*Third*, the information is not public information, nor is it confidential and proprietary.  Diversified believes the list of wells that Plants has serviced is not publicly disclosed, nor has Plants identified any location of any alleged public disclosure.  Even if it had, the fact of public availability would not be enough to resist production.  *See Sierra Club*, 2020 WL 7240367, at *1.  Furthermore, the information is not confidential and proprietary; the list of wells serviced does not disclose trade secrets, client names, or other competitive techniques.  And, to the extent it did, Diversified would be willing to accept Plants designating such materials "Attorney's Eyes Only" under the Protective Order in *McEvoy*, as Diversified informed Plants during the parties' meet and confers.  This would limit the disclosure of the materials to only Diversified's counsel.  *See* Protective Order (*McEvoy* ECF No. 82) at 2.  Consequently, the alleged confidentiality of the well list would be preserved.

## V.   PLANTS MUST PRODUCE ITS PLUGGING BUDGET AND COST DATA

Finally, Plants must produce documents responsive to Requests 4, 5, 6, and 7 of the subpoena, which seeks, generally, documents sufficient to show Plants's budgets, actual costs,

supporting documentation, and communications about its well-plugging services for the wells identified in Request 3.  These materials are all relevant to the cost of plugging a well in the Appalachian Basin, as well as to the credibility of any expert opinion from Mr. Plants.  Several of the Requests seek only "documents sufficient to show" the requested information, again eliminating any potential argument about burden, and the remaining Requests require only a simple search.  Finally, the information is not publicly available or subject to withholding based on confidentiality concerns.

### A.  Requests 4, 5, 6, and 7 Call For Relevant Data Because They Seek Information About Well-Plugging Costs and Impeachment Materials

Requests 4–7 seek Plants's budgets, actual costs, supporting documentation, and communications about its well-plugging services.  The full text and corresponding objection for Requests 4, 5, 6, and 7 are below:

> 4.  Documents sufficient to show the budgets created for the plug and abandonment services for wells referenced in Request No. 3.
>
> **SPECIFIC OBJECTIONS:**  In addition to the above General Objections, P&G objects to this Request on the grounds that it is vague, overly broad, and unduly burdensome, and because it calls for the disclosure of documents that are not relevant to any party's claims or defenses. Also, P&G objects to this Request on the grounds that it seeks the production of documents that are equally available to Diversified through publicly available sources, and to the extent such information is not publicly available, the Request calls for the disclosure of highly confidential and proprietary business information to a competitor of P&G.
>
> **RESPONSE:**  P&G stands on its objections and will not be producing any responsive documents to the extent they exist.

> 5.      Documents sufficient to show the actual costs for the plug and abandonment services for wells referenced in Request No. 3.
>
> **SPECIFIC OBJECTIONS:**  In addition to the above General Objections, P&G objects to this Request on the grounds that it is vague, overly broad, and unduly burdensome, and because it calls for the disclosure of documents that are not relevant to any party's claims or defenses.  Also, P&G objects to this Request on the grounds that it seeks the production of documents that are equally available to Diversified through publicly available sources, and to the extent such information is not publicly available, the Request calls for the disclosure of highly confidential and proprietary business information to a competitor of P&G.
>
> **RESPONSE:**  P&G stands on its objections and will not be producing any responsive documents to the extent they exist.

> 6.      Documents prepared in your normal course of business to support the budget created for the services to the wells referenced in Request No. 3.
>
> **SPECIFIC OBJECTIONS:**  In addition to the above General Objections, P&G objects to this Request on the grounds that it is vague, overly broad, and unduly burdensome, and because it calls for the disclosure of documents that are not relevant to any party's claims or defenses.  Also, P&G objects to this Request on the grounds that it seeks the production of documents that are equally available to Diversified through publicly available sources, and to the extent such information is not publicly available, the Request calls for the disclosure of highly confidential and proprietary business information to a competitor of P&G.
>
> **RESPONSE:**  P&G stands on its objections and will not be producing any responsive documents to the extent they exist.

> 7.      Documents and communications comparing Your costs of plug and abandonment services with others (including but not limited to Diversified).
>
> **SPECIFIC OBJECTIONS:**  In addition to the above General Objections, P&G objects to this Request on the grounds that it is vague, overly broad, and unduly burdensome, and because it calls for the disclosure of documents that are not relevant to any party's claims or defenses.  Also, P&G objects to this Request on the grounds that it seeks the production of documents that are equally available to Diversified through publicly available sources, and to the extent such information is not publicly available, the Request calls for the disclosure of highly confidential and proprietary business information to a competitor of P&G
>
> **RESPONSE:**  P&G stands on its objections and will not be producing any responsive documents to the extent they exist

Ex. B (Plants Discovery Resp.) at 5–6.   The information sought in these Requests—budgets,

costs of plugging, and comparisons of plugging costs—is relevant because it shows the amounts

another well plugging company, in the same area, expends to plug a well, a detail that can be used to undermine Plaintiffs' assertions about Diversified's own costs. Indeed, it seeks the amounts that Plaintiffs' own proposed expert expends to plug a well. Request 7, which seeks any documents or communications comparing Plants's plugging costs to others (including Diversified), is relevant for the same reason.

These materials are also relevant to the credibility of Mr. Plants for similar reasons. If any of the information conflicts with Mr. Plants's conclusions about what Diversified's estimated or actual costs it will harm his credibility. Imagine, for example, that Diversified estimates that it would cost $25,000 to plug a well, Mr. Plants opines that this is an impossibly low estimate, but Plants internally estimates it would cost $20,000 to plug a similar well. Mr. Plants's opinion would be undermined by his own company's operations. The requested materials, therefore, are relevant also to the credibility and impeachment of Plaintiffs' proposed expert witness. *See Beckner*, 2006 WL 6906942, at *4 (finding "the potential for impeachment [of an expert] justifies production of the requested materials").

## B.    Requests 4, 5, 6, and 7 Are Not Objectionable

For Requests 4–7, Plants repeats the same objections asserted for the other Requests, and they should be overruled for the same reasons as the other Requests. *First*, none of the Requests are vague, and, if they were, Diversified would have been happy to clarify during the meet and confer. Plants did not actually raise vagueness during those discussions because its objection is a boilerplate smokescreen unrelated to the Request's text, which is comprehensible.

**Second**, the Requests are not overbroad or unduly burdensome.  Plants did not explain this objection, so Diversified does not know its basis.  However, Diversified was careful to limit several Requests to "documents sufficient to show," which leaves the choice in Plants's hands as to the specific materials needed to produce this information in a manner that best limits Plants's burden of production.  The remainder are Requests 6 and 7, which would require no more than a search for documents and communications concerning budgets and comparisons between Plants's plugging and abandonment services and those of others—Diversified knows of no reason why this would result in collection or identification of a large volume of documents.

**Third**, the Requests simply do not seek public information, and Plants has not identified those alleged public sources of information.  Even if the information was publicly available it would not be subject to withholding on that basis.  *See Sierra Club*, 2020 WL 7240367, at *1.

**Fourth**, the Requests are not confidential.  Plants has made no argument in its objections or during the parties' discussions even suggesting that these materials are protected trade secrets.  Even if they were, Plants could produce them as "Attorney's Eyes Only" under the *McEvoy* Protective Order, and they would be withheld from Diversified's employees.  *See* Protective Order (*McEvoy* ECF No. 82) at 2.  Plants's alleged confidentiality concerns do not warrant its refusal to produce the information.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Diversified's Motion To Compel Compliance With Subpoena *Duces Tecum*, Order Plants to produce documents responsive to Requests 1 through 7 and grant such further relief as the Court deems appropriate under the circumstances.

Dated: May 10, 2023

Respectfully submitted:


  /s/ John B. Dempsey                    
Daniel T. Brier (PA ID 53248)
dbrier@mbklaw.com
John B. Dempsey (PA ID 88017)
jdempsey@mbklaw.com
Timothy E. Gates (PA ID 202305)
tgates@mbklaw.com
Myers, Brier @ Kelly, LLP
425 Biden Street, Suite 200
Scranton, PA 18503
Phone:   570-342-6100

Daniel Donovan, P.C. (*pro hac vice* forthcoming)
daniel.donovan@kirkland.com
Ragan Naresh, P.C. (*pro hac vice* forthcoming)
ragan.naresh@kirkland.com
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Phone: 202-389-5267


Kenneth Young (*pro hac vice* forthcoming)
kenneth.young@kirkland.com
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, TX 77002
Phone: 713-836-3600


***Counsel for Diversified Energy Company PLC, Diversified Production LLC, and
Diversified Ga & Oil Corporation***

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 10, 2023 a copy of the foregoing was served by U.S. mail and by e-mail upon the following:

William S. Flynn
Brian A. Glasser
John W. Barrett
Brian R. Swiger
Athanasios Basdekis
**BAILEY & GLASSER, LLP**
209 Capitol Street
Charleston, West Virginia 25301
wflynn@baileyglasser.com
bglasser@baileyglasser.com
jbarrett@baileyglasser.com
bswiger@baileyglasser.com
tbasdekis@baileyglasser.com

Panida A. Anderson
**BAILEY & GLASSER, LLP**
1055 Thomas Jefferson St. NW, Suite 540
Washington, DC 20007
panderson@baileyglasser.com

Joseph M. Lovett
Benjamin A. Luckett
J. Michael Becher
**APPALACHIAN MOUNTAIN ADVOCATES**
P.O. Box 507
Lewisburg, WV 24901
jlovett@appalmad.org
bluckett@appalmad.org
mbecher@appalmad.org

*Counsel for Mark McEvoy, James Tawney, Susan Tawney, Samuel Stark, Susan Dennison, Mark Goff, Carol DelRosso, George DelRosso, Benjamin Patterson, Chad Silvester, Clinton and Candace Drainer Irrevocable Trust, Eben Fritts, Eben Fritts III, Gary Wentz, Heidi Deem, Jeffery Saltis, Kellie Saltis, Lane Evans, Minerva Evans, Maynard Tanner, Jennifer Tanner, Joan Medley, Jacob Collette, Regina Collette, Scott Corcoran, Kathy Johnson, and Christine Cochran*

Jennifer J. Hicks
**BABST, CALLAND, CLEMENTS & ZOMNIR, P.C.**
300 Summers Street, Suite 1000
Charleston, WV 25301
jhicks@babstcalland.com

Mark K. Dausch
**BABST, CALLAND, CLEMENTS & ZOMNIR, P.C.**
Two Gateway Center, 6th Floor
603 Stanwix Street
Pittsburgh, PA 15222
mdausch@babstcalland.com

Anna G. Rotman
Nick Brown
**KIRKLAND & ELLIS LLP**
609 Main Street
Houston, TX 77002
anna.rotman@kirkland.com
nick.brown@kirkland.com

*Counsel for EQT Production Company, EQT Production HTW, LLC, EQT Energy LLC, EQT Investment Holdings, LLC, EQT Gathering, LLC, EQT Midstream Partners LP, EQT Midstream Partners LP, EQT GP Holdings, LP, and EQT Corporation*

Timur R. Dikec
**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Six PPG Place, Suite 700
Pittsburgh, PA 15222
timur.dikec@nelsonmullins.com

*Counsel for Plants and Goodwin, Inc.*

/s/ John B. Dempsey
John B. Dempsey